UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JACK CAMPBELL,<br><br>              Plaintiff,<br><br>    v.<br><br>MENTAL HEALTH CLINICIAN BAKER; MENTAL HEALTH CLINICIAN MALLORY; KOOTENAI COUNTY JAIL; and VITAL CORE HEALTH STRATEGIES,<br><br>              Defendants. | Case No. 2:25-cv-00057-AKB<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

The Clerk of Court conditionally filed Plaintiff Jack Campbell's Complaint because of Plaintiff's status as an inmate and in forma pauperis request. A "conditional filing" means that a plaintiff must obtain authorization from the Court to proceed. Upon screening, the Court must dismiss claims that are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

Having reviewed the record, the Court enters the following Order permitting Plaintiff to proceed on some of the claims in the Complaint.

**1.      Standards of Law for Screening Complaints**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim for relief under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient for the reviewing

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 1**

court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To state an actionable claim, a plaintiff must provide "enough factual matter (taken as true) to suggest" that the defendant committed the unlawful act, meaning that sufficient facts are pled "to raise a reasonable expectation that discovery will reveal evidence of illegal [activity]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 US. at 678 (quoting *Twombly*, 550 U.S. at 555).

The Court liberally construes the pleadings to determine whether a case should be dismissed for a failure to plead sufficient facts to support a cognizable legal theory or for the absence of a cognizable legal theory. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable factual *and* legal basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989) (discussing Federal Rule of Civil Procedure 12(b)(6)), *superseded by statute on other grounds as stated in Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

2.   **Factual Allegations**

Plaintiff is a prisoner in the custody of the Idaho Department of Correction. At the time of the events described in the Complaint, Plaintiff was a pretrial detainee in the Kootenai County Jail. The jail contracts with Vital Core Health Strategies ("Vital Core") for the provision of medical and mental health treatment to jail inmates.

When Plaintiff was initially booked into the Kootenai County Jail, he informed a nurse that he has schizoaffective disorder and was not taking his medications. Plaintiff was placed on suicide watch. *Am. Compl.*, Dkt. 8, at 3. The next day, Mental Health Clinician Baker asked Plaintiff questions regarding suicidal ideation. After Plaintiff's responses—which Plaintiff does not describe—Baker released Plaintiff from suicide watch. *Id*. Plaintiff claims that Baker's evaluation

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 2**

was not a "proper" mental health screening and that neither the jail nor Vital Core has a policy providing for mental health screening for inmates immediately upon booking. *Id*. at 3–4.

Instead of a "proper mental health screening upon intake," Plaintiff was informed by unidentified personnel that he had to wait a full thirty days to be examined by a mental health provider. *Id*. at 5. Plaintiff told staff that he was suffering from hallucinations, had not slept in days, and was manic. Plaintiff alleges that the jail and/or Vital Core has a policy of waiting thirty days to provide mental health treatment to any inmates who were not on mental health medication when booked into the jail—even if an inmate not on such medication requires mental health treatment. Plaintiff was ultimately seen by mental health staff, but not until forty-two days after he was booked into the jail. *Id*. at 5–6.

When Plaintiff was finally evaluated for mental health issues on June 24, 2024, Plaintiff was prescribed Cymbalta. The "appointment took less than 5 minutes," and Plaintiff did not see that particular provider again. *Id*. at 8.

Plaintiff later asked to speak to a mental health provider. Defendant Baker came to evaluate Plaintiff. Plaintiff told Baker he was "still in mental health distress," but Baker informed Plaintiff that the Cymbalta required six to eight weeks to take full effect." *Id*. at 11. Baker informed Plaintiff about potential "coping skills" and left. This was the last time Plaintiff saw a mental health provider in person before he was transferred out of the jail. *Id*.

On July 15, 2024, Plaintiff stated in a mental health request that he did "not want to live." *Id*. at 10. The next day, unidentified mental health staff replied to the request, asking if Plaintiff was "going to do self harm." *Id*. The Amended Complaint does not disclose Plaintiff's response to this question. "No one ever put a suicide protocol into effect taking all items from [Plaintiff's]

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 3**

room . . . nor was [Plaintiff] put in a safety smock." *Id*. Other than the written question about self-harm, Plaintiff was not evaluated by any mental health staff.

On July 24, 2024, Plaintiff submitted another mental health request. No one responded to this request in person. *Id*. at 12. Instead, an unidentified provider wrote back, stating that the provider thought Plaintiff was on Celexa rather than Cymbalta.

In addition to these allegations regarding his mental health treatment, Plaintiff also asserts that he was placed in dangerous conditions of detention. Specifically, from May to October 2024, Plaintiff was placed in a cell with inmates who were "detoxing." *Id*. at 14. These inmates threatened Plaintiff with bodily harm and also stole Plaintiff's food. One inmate screamed "Kill him, kill him, stab him, rob him"—referring to Plaintiff—for two days. *Id*. Plaintiff had no access to an emergency call button during these times. Plaintiff suffered from sleep deprivation as a result, "which increased [his] chronic pain, panic attacks, and weightloss [sic]." *Id*.

Plaintiff sues Mental Health Clinician Baker, as well as Mental Health Clinician Mallory, who was purportedly "in charge of the mental health inmates at the jail." *Id*. at 2. Plaintiff also sues Vital Core and the Kootenai County Jail.

3. **Discussion**

   A. *Standards of Law*

Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). A defendant causes a constitutional deprivation within the meaning of § 1983 "if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 4**

Jail officials and jail medical providers generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045.

However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists . . . a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). A plaintiff can establish this causal connection by alleging a defendant (1) set in motion a series of acts by others that violated the Constitution, or knowingly refused to terminate a series of such acts, which the supervisor "knew or reasonably should have known would cause others to inflict a constitutional injury"; (2) knowingly failed to act or acted improperly "in the training, supervision, or control of his subordinates"; (3) acquiesced in the constitutional deprivation; or (4) engaged in conduct showing "a reckless or callous indifference to the rights of others." *Id*. at 1205–09 (internal quotation marks omitted).

To bring a § 1983 claim against a local governmental entity or a private entity performing a government function—such as Kootenai County or Vital Core—a plaintiff must allege that the execution of an official policy or unofficial custom inflicted the injury of which the plaintiff complains, as required by *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978). *See also Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (applying *Monell* to private entities performing a government function). Under *Monell*, the requisite elements of a § 1983 claim against such an entity are the following: (1) the plaintiff was deprived of a

constitutional right; (2) the entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001). An entity also "may be held liable under § 1983 when the individual who committed the constitutional tort was an official with final policy-making authority" or when "such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010), *overruled in part on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1069 (9th Cir. 2016) (en banc).

An unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68 (1970)). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

Plaintiff cites both the Fourteenth Amendment and the Eighth Amendment's prohibition against cruel and unusual punishment. Because Plaintiff was a pretrial detainee at the time his claims arose, the appropriate constitutional provision under which to analyze his claims is the Fourteenth Amendment's Due Process Clause—not the Eighth Amendment.

Pretrial detainees have a due process right to adequate conditions of detention, including adequate medical treatment, while they are awaiting trial. A due process violation occurs when the conditions to which the detainee is subjected amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 6**

Conditions-of-detention claims are analyzed using a standard of "objective deliberate indifference." *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018). Under that standard, a detainee must establish the following elements:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id*. The application of this standard "will necessarily turn on the facts and circumstances of each particular case." *Id*. (internal quotation marks and alteration omitted).

Although an objective standard must be used in evaluating conditions-of-confinement claims of pretrial detainees, this standard must not be confused with the objective standard used for evaluating claims of negligence under state law. This is because negligence—the "mere lack of due care" by a governmental official—"does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc) (internal quotation marks omitted); *see also Daniels v. Williams*, 474 U.S. 327, 332 (1986) (stating that negligence and ordinary negligence are not actionable under § 1983, because such actions are not an abuse of governmental power but merely a "failure to measure up to the conduct of a reasonable person"). Therefore, a pretrial detainee complaining of unconstitutional conditions of detention must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Castro*, 833 F.3d at 1071.

A plaintiff cannot simply restate these standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 7**

causal link between each defendant and Plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

For the reasons that follow, the Court concludes that Plaintiff's Complaint, liberally construed, appears to state colorable due process claims (1) against Vital Core and the Kootenai County Jail for having a policy of delaying access to mental health treatment, and (2) against the Kootenai County Jail for unconstitutional conditions of detention with respect to detoxing inmates.

### B. Claim One: Lack of Mental Health Screening upon Intake, Asserted Against All Defendants

Plaintiff claims that Kootenai County Jail inmates do not receive any mental health evaluations when they are booked into the jail. Plaintiff alleges that the suicide watch screenings he received on intake were not "proper" evaluations. He also appears to contend that the suicide watch screening performed by Mental Health Clinician Baker was inadequate.

Plaintiff's claim against Baker is implausible. The only allegations in the Amended Complaint regarding this claim against Baker are that Baker asked Plaintiff questions and later removed him from suicide watch. This is insufficient to plausibly allege that Baker acted with objective deliberate indifference to a serious risk of harm to Plaintiff.

Plaintiff's claim against Mallory is also implausible. There are no direct allegations against Mallory at all—only that Mallory is "in charge." However, as explained earlier, a defendant is not liable under § 1983 simply because they are a supervisor. There is nothing in the amended complaint to raise a plausible inference that Mallory personally participated in the alleged constitutional violation or recklessly failed to prevent such a violation. *Taylor*, 880 F.2d at 1045,

Finally, Plaintiff's *Monell* claims against Kootenai County Jail and Vital Core, in which he alleges that neither entity provides mental health screening to inmates on intake, is implausible because they are belied by other allegations in the Amended Complaint. Plaintiff acknowledges

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 8**

that he was given suicide watch screenings upon intake. Plaintiff's belief that these were not "proper" mental health screenings is a mere disagreement with mental health providers as to what constitutes a mental health screening. Such disagreements are not actionable under § 1983. *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) (Eighth Amendment context).

For these reasons, Claim One fails to state a claim upon which relief may be granted and must be dismissed.

### C.     *Claim Two: Policy of Delaying Mental Health Treatment to Inmates Not on Mental Health Medication, Asserted Against All Defendants*

In Claim Two, Plaintiff asserts that Vital Core and/or the Kootenai County Jail has a policy of delaying mental health treatment, for at least thirty days, for inmates who were not on mental health medication upon booking, even if those inmates require mental health treatment. Plaintiff himself had to wait forty-two days to see a mental health provider, despite asking for treatment and explaining his diagnoses and symptoms. The allegations in the Amended Complaint are sufficient to state a plausible *Monell* claim against these entities based on that alleged policy.

However, the Amended Complaint does not state a plausible claim against Baker or Mallory based on the delay in mental health treatment. Once again, the only allegations against Baker or Mallory with respect to this claim are that they were "in charge." *Am. Compl.* at 7. Without more, Plaintiff's claims against Baker and Mallory based on the delay are implausible.

### D.     *Claim Three: Failure to Provide Sufficient Mental Health Staff to Treat Plaintiff in an Individualized Manner, Asserted Against Defendants Baker and Mallory*

In Claim Three, Plaintiff asserts that Baker and Mallory—who were purportedly "in charge" of "answering mental health requests"—failed to ensure that the jail had enough mental health providers to treat Plaintiff in an individualized manner. This claim is based on the five-minute mental health evaluation of Plaintiff on June 24, 2024. Plaintiff does not identify the provider who evaluated him on that date.

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 9**

The bare allegation that Baker and Mallory were in charge of answering mental health requests is insufficient to plausibly assert that either Defendant acted with objective deliberate indifference with respect to Plaintiff's June 24 mental health evaluation. There is nothing in the Amended Complaint to suggest that Baker or Mallory were directly involved in that evaluation or that they should have known of a constitutional violation yet failed to act to prevent it. Therefore, Claim Three must be dismissed.

### E.    Claim Four: Failure to Respond to Signs that Plaintiff Was Suicidal on July 15, 2024,[1] Asserted Against Defendants Baker and Mallory

Plaintiff asserts in Claim Four that Baker and Mallory acted with objective deliberate indifference to Plaintiff's mental health issues when he stated, in a July 15, 2024, mental health request, that he was suicidal. Once again, there are no individualized allegations against either Baker or Mallory with respect to this claim. Thus, this claim is implausible. *See Taylor*, 880 F.2d at 1045.

### F.    Claim Five: Unconstitutional Conditions of Confinement with Respect to Detoxing Inmates, Asserted Against Kootenai County Jail

Finally, Plaintiff claims that the jail's decision to house him with "detoxing" inmates, some of whom threatened Plaintiff with severe bodily harm or death, violated his right to due process. This claim is plausible, and Plaintiff may proceed against the Kootenai County Jail on Claim Five.

### 4.    Motions for Appointment of Counsel

Plaintiff seeks appointment of counsel. *See* Dkts. 3, 9. Unlike criminal defendants, prisoners and indigents in civil actions have no constitutional right to counsel unless their physical liberty is at stake. *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 25 (1981). Whether a court appoints

---

[1]    Claim Four also reasserts Claim Three—that there were not enough mental health providers on staff. This claim has already been addressed above.

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 10**

counsel for indigent litigants is within the court's discretion. *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986).

In civil cases, counsel should be appointed only in "exceptional circumstances." *Id*. To determine whether exceptional circumstances exist, the court should evaluate two factors: (1) the likelihood of success on the merits of the case, and (2) the ability of the plaintiff to articulate the claims pro se considering the complexity of legal issues involved. *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). Neither factor is dispositive, and both must be evaluated together. *Id*.

Plaintiff's Complaint, liberally construed, appears to state a claim upon which relief could be granted if the allegations are proven at trial. However, without more than the bare allegations of the Complaint, the Court does not have a sufficient basis upon which to assess the merits at this point in the proceeding. The Court also finds that Plaintiff has articulated the claims sufficiently, and that the legal issues in this matter are not complex. Based on the foregoing, the Court will deny Plaintiff's motions for appointment of counsel. If it seems appropriate later in this litigation, the Court will reconsider appointing counsel.

A federal court has no authority to require attorneys to represent indigent litigants in civil cases under 28 U.S.C. § 1915(e)(1) or under the Court's inherent authority. *Mallard v. U.S. Dist. Court for S. Dist. of Iowa*, 490 U.S. 296, 298 (1989) (holding that the appointment of counsel provision in § 1915, formerly found in subsection (d), does not "authorize[] a federal court to require an unwilling attorney to represent an indigent litigant in a civil case"); *Veenstra v. Idaho State Bd. of Corr.*, Case No. 1:15-cv-00270-EJL (D. Idaho May 4, 2017) ("[The Court] does not have inherent authority to compel an attorney to represent Plaintiffs pro bono."). Rather, when a Court "appoints" an attorney, it can do so only if the attorney voluntarily accepts the assignment. *Id.* The Court has no funds to pay for attorney fees in civil matters such as this one, and it is often

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 11**

difficult to find attorneys willing to work on a case without payment—especially in prisoner cases, where contact with the client is particularly difficult. For these reasons, Plaintiff should attempt to procure counsel on a contingency or other basis, if possible.

**5.    Conclusion**

Plaintiff may proceed as outlined above. This Order does not guarantee that Plaintiff's claims will be successful. Rather, it merely finds that some are plausible, meaning that they will not be summarily dismissed at this time but will proceed to the next stage of litigation. This Order is not intended to be a final or a comprehensive analysis of Plaintiff's claims.

Defendants may still file a motion for dismissal or motion for summary judgment if the facts and law support such a motion.[2] Because (1) prisoner filings must be afforded a liberal construction, (2) governmental officials often possess the evidence prisoners need to support their claims, and (3) many defenses are supported by governmental records, an early motion for summary judgment—rather than a motion to dismiss—is often a more appropriate vehicle for asserting procedural defenses such as non-exhaustion or entitlement to qualified immunity.

**ORDER**

**IT IS ORDERED:**

1. Plaintiff's Motions for Appointment of Counsel (Dkts. 3 and 9) are DENIED.

2. Plaintiff may proceed on Claim Two against Defendants Vital Core and the Kootenai County Jail, as well as Claim Five against the Kootenai County Jail. All other claims against all other Defendants are DISMISSED, and Mental Health

---

[2]    The standards for a motion to dismiss for failure to state a claim under Rule 12(b)(6) are the same standards that the Court has used to screen the Complaint under §§ 1915 and 1915A. Therefore, motions to dismiss for failure to state a claim are disfavored in cases subject to §§ 1915 and 1915A and may be filed only in extraordinary circumstances.

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 12**

Clinicians Baker and Mallory are TERMINATED as parties to this action. If Plaintiff later discovers facts sufficient to support a claim that has been dismissed, Plaintiff may move to amend the complaint to assert such claims.[3]

3. **Within ninety days after entry of this Order, Plaintiff must provide the Court with the names of the individuals who must be served with process on behalf of Vital Core and the Kootenai County Jail, as well as the physical service addresses for those individuals**. The Court refers Plaintiff to Rule 4 of the Federal Rules of Civil Procedure with respect to service upon entities. Once Plaintiff provides the Court with this information, the Court will attempt to effect service of process upon Defendants. If Plaintiff does not submit this information within ninety days, this case may be dismissed for lack of service. *See* Fed. R. Civ. P. 4(m).

4. After Defendants appear, the Court will issue an order governing the pretrial schedule in this case, including disclosure and discovery. *See* General Order 343, *In Re: Adoption of a Standard Disclosure and Discovery Order for Pro Se Prisoner Civil Rights Cases* (Feb. 8, 2019).

5. Each party must ensure that all documents filed with the Court are simultaneously served upon the opposing party (through counsel if the party has counsel) by first-

---

[3] Any amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon or incorporate by reference prior pleadings. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended. The proposed amended pleading must be submitted at the time of filing a motion to amend."); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa County*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint).

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 13**

       class mail or via the CM/ECF system, pursuant to Federal Rule of Civil Procedure 5. Each party must sign and attach a proper mailing certificate to each document filed with the court, showing the manner of service, date of service, address of service, and name of person upon whom service was made.

6. The Court will not consider ex parte requests unless a motion may be heard ex parte according to the rules and the motion is clearly identified as requesting an ex parte order, pursuant to Local Rule of Civil Practice before the United States District Court for the District of Idaho 7.2. ("Ex parte" means that a party has provided a document to the court, but that the party did not provide a copy of the document to the other party to the litigation.)

7. All Court filings requesting relief or requesting that the Court make a ruling or take an action of any kind must be in the form of a pleading or motion, with an appropriate caption designating the name of the pleading or motion, served on all parties to the litigation, pursuant to Federal Rule of Civil Procedure 7, 10 and 11, and Local Rules of Civil Practice before the United States District Court for the District of Idaho 5.1 and 7.1. The Court will not consider requests made in the form of letters.

8. No party may have more than three pending motions before the Court at one time, and no party may file a motion on a particular subject matter if that party has another motion on the same subject matter currently pending before the Court. Motions submitted in violation of this Order may be stricken, summarily denied, or returned to the moving party unfiled.

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 14**

9.  Plaintiff must notify the Court immediately if Plaintiff's address changes. Failure to do so may be cause for dismissal of this case without further notice.

10. Pursuant to General Order 457, this action is hereby returned to the Clerk of Court for random civil case assignment to a presiding judge, on the proportionate basis previously determined by the District Judges, having given due consideration to the existing caseload.

DATED: July 15, 2025

_Amanda K. Brailsford_
Amanda K. Brailsford
U.S. District Court Judge

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 15**